# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCINE LOMELI,<br><br>        Plaintiff,<br><br>   vs.<br><br>COSTCO WHOLESALE CORPORATION *et al.*,<br><br>        Defendants. | CASE NO. 11-CV-2508-MMA(KSC)<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION TO REMAND; and**<br><br>[Doc. No. 4]<br><br>**GRANTING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 3] |

   On October 28, 2011, Defendants Costco Wholesale Corporation and Keith Paget removed this action from state court pursuant to 28 U.S.C. §§ 1331, 1441(b). Pending before the Court are Defendants' motion to dismiss and Plaintiff Francine Lomeli's motion to remand. Fundamental to the resolution of both motions is whether section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, preempts Plaintiff's state law claims. For the reasons set forth below, the Court finds that section 301 preempts Plaintiff's first claim for breach of the implied covenant of good faith and fair dealing and **DISMISSES** the claim for failure to exhaust collective bargaining grievance procedures. The Court exercises supplemental jurisdiction over Plaintiff's claims for false imprisonment and defamation and **DISMISSES** these claims as time-barred. Finally, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims for intentional infliction of emotional distress and for violation of California Business and Professions Code § 17200 and **REMANDS** these claims to the state court pursuant to 28 U.S.C. § 1367(c).

## I. BACKGROUND

Beginning in 2004, Plaintiff worked for Defendant Costco as a "food court employee" at the company's Chula Vista, California location. [Compl., Doc. No. 1-1 at ¶ 5.][1] Her duties included completing cash transactions for items purchased in the food court. [*See id.* ¶ 8.] As an hourly employee, Plaintiff was a member of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union 542. [Rodriguez Decl. to Opp. to Motion to Remand, Doc. No. 5-1 at ¶¶ 3-4.] As such, the terms and conditions of her employment were governed by a collective bargaining agreement (the "CBA") between Costco and the union. [*Id.*; *see* CBA, Ex. A. to Rodriguez Decl.][2]

On August 13, 2010, Plaintiff charged a customer for several food items, but voided the transactions and sent the customer inside the Costco store to pay after the customer indicated he did not have enough cash for the entire purchase. [*Id.* ¶ 8.] Once the customer paid with his credit card, he returned, showed Plaintiff his receipt, and paid for an additional item with cash. [*Id.* ¶¶ 9-12.]

On August 16, 2010, Plaintiff was summoned to the warehouse manager's office, where Defendant Paget, Costco's Regional Loss Prevention Manager, and two others waited. [*Id.* ¶¶ 3, 14-16.] Paget indicated he was investigating "hidden shrink," which Plaintiff understood to mean theft of cash, and began to "interrogate" her for the alleged theft of $31.48 related to the voided transaction on August 13, 2010. [*Id.* ¶¶ 18-19.] Paget stated that the customer had not paid for any food court items inside the Costco store, and surveillance cameras showed Plaintiff taking $31.48 from the customer while charging him only $1.67. [*Id.* ¶¶ 21-22.]

Paget continued to aggressively "interrogate" Plaintiff for two hours "despite her cries and explanations." [*Id.* ¶ 26.] Over the course of the interview, Paget threatened her with arrest and continually sought a written confession, which Plaintiff refused to provide. [*Id.* ¶ 29.] Plaintiff

---

[1] All references to documents on the Court's docket are to the CM/ECF renumbered pages, not to the document's original pagination.

[2] The Court may consider the CBA even though the Complaint does not specifically identify it by name. *Inlandboatmens Union of the Pac. v. Dutra Grp.*, 279 F.3d 1075, 1083 (9th Cir. 2002); *Busey v. P.W. Supermarkets, Inc.*, 368 F. Supp. 2d 1045, 1054 (N.D. Cal. 2005). Plaintiff has not contested the authenticity of the CBA or argued that it did not govern her overall employment.

1 vehemently denied the accusation, felt embarrassed, and felt trapped inside the office because
2 Paget and another man blocked her access to the office door.  [*Id.* ¶¶ 24-25.]  Plaintiff "finally
3 grabbed her personal belongings[,] ran out of the office, and was humiliated [by] the interrogation
4 after two hours [and] by the crowd of employees and supervisors gathered near the small office.
5 She was crying while the onlookers were staring at her, some of them laughing."  [*Id.* ¶ 32.]

6 Costco then suspended Plaintiff for three days without pay for "acts of dishonesty towards
7 the company, customers, and fellow employees."  [*Id.* ¶ 33.]  When Plaintiff returned to work, she
8 was told that she had been cleared by another investigator, who had reviewed the matter and
9 concluded that the customer had indeed paid for the food court items when he went inside the
10 Costco store.  [*Id.* ¶ 34.]

11 On August 19, 2011, Plaintiff filed suit against Defendants for (1) breach of the covenant
12 of good faith and fair dealing, (2) defamation (slander), (3) defamation (slander per se), (4) false
13 imprisonment, (5) intentional infliction of emotional distress ("IIED"), and (6) violation of
14 California Business and Professions Code § 17200.  Defendants now move to dismiss Plaintiff's
15 claims on a variety of alternative grounds, including preemption under section 301 of the Labor
16 Management Relations Act.  Plaintiff opposes dismissal and requests that the Court remand this
17 action to state court.

18 **II.  LEGAL STANDARD**

19 A suit may be removed to federal court only if it could have been brought there originally.
20 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Absent diversity of
21 citizenship, federal question jurisdiction is required.  *Caterpillar, Inc.*, 482 U.S. at 392.  Under the
22 "complete preemption doctrine," once an area of state law has been completely preempted, any
23 claim purportedly based on that preempted state law is considered, from its inception, a federal
24 claim, and is removable as arising under federal law.  *Id.* at 393.  "Controversies involving
25 collective bargaining agreements constitute one such area."  *Galvez v. Kuhn*, 933 F.2d 773, 776
26 (9th Cir. 1991) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988)).

27 Section 301 of the Labor Management Relations Act provides federal jurisdiction over
28 "suits for violation of contracts between an employer and a labor organization."  29 U.S.C. §

185(a). Federal law under section 301 governs suits for breach of a collective bargaining agreement and "entirely displaces any state claim based on a CBA, as well as any state claim whose outcome depends on interpretation of the terms of a CBA." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987); *see also Cook v. Lindsay Olive Growers*, 911 F.2d 233, 237 (9th Cir. 1990); *Miller v. AT&T Network Sys.*, 850 F.2d 543, 545 (9th Cir. 1988).

"A state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 693 (9th Cir. 2001). "If the plaintiff's claim cannot be resolved without interpreting the applicable CBA . . . it is preempted." *Id.* at 691. Alternatively, "if the claim may be litigated without reference to the rights and duties established in a CBA . . . it is not preempted." *Id.* "The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim." *Id.* at 691. Section 301 preemption does not follow "simply because the court may have to consult the CBA to evaluate it; 'looking to' the CBA merely to discern that none of its terms is reasonably in dispute does not require preemption." *Id.* at 692.

When state law claims are preempted, they must either be treated as section 301 claims or dismissed as preempted by federal law. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220-21 (1985).

### III. DISCUSSION

As a threshold matter, the Court must determine whether section 301 preempts any or all of Plaintiff's claims. Plaintiff argues her claims should not be dismissed because they do not directly involve any CBA provision. According to Plaintiff, her claims are based on her treatment during Costco's theft investigation, which was a separate matter from the CBA. As a result, her claims are not preempted and should be remanded. Defendants argue that Plaintiff's claims require interpretation of the CBA and that section 301 preempts her claims as a result. Defendants further argue that the Court should dismiss this action because Plaintiff did not exhaust her grievance remedies under the CBA and did not bring suit within the applicable statute of limitations period.

///

**A.    Section 301 Preempts Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing Claim**

Defendants argue that section 301 preempts Plaintiff's covenant claim because the claim expressly relies on the terms of the CBA. [Doc. No. 3-1 at 12.] Plaintiff argues that the covenant claim may be adjudicated independently of any CBA. [Doc. No. 13-1 at 10.]

The implied covenant in California has been described as a way "to protect the job security of employees who at common law could be fired at will." *Young v. Anthony's Fish Grottos*, 830 F.2d 993, 999 (9th Cir. 1987). Since union employees generally have job security through their CBAs, the Ninth Circuit has held that this tort is preempted by section 301 when a union provides comparable job security. *Milne Emps. Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1411 (9th Cir. 1992)*; Jackson v. S. Cal. Gas Co.*, 881 F.2d 638, 644-45 (9th Cir. 1989). Because the collective bargaining agreement here contains provisions that provide for job security, section 301 preempts Plaintiff's covenant claim. [*See* Doc. No. 5-1 at 10 (CBA termination provisions, including investigatory suspension clause ).]

Further, Plaintiff's covenant claim is preempted on the additional basis that it expressly relies on the operative CBA, (*see* Exh. A. to Doc. No. 5-1), which she refers to as the "employment agreement." [Compl., Doc. No. 1-1 at ¶ 37.] Specifically, she alleges that the agreement "contained an implied covenant of good faith and fair dealing" to treat her fairly in "performance under said employment agreement and to refrain from any act that would prevent or impede [her] enjoyment of the fruits of said contract." [*Id.*] Further, the implied covenant required Defendants "to fairly, honestly, and reasonably perform the terms and conditions of said agreement." [*Id.*] Plaintiff alleges Defendants breached this covenant by, among other things, attempting to "coerce" her "into drafting a false confession and subsequently suspend[ing her] without just or legitimate cause." [*Id.* ¶ 39(c).]

The CBA also contains a provision that permits Costco, at its option, to "give an Employee an immediate investigatory suspension for a maximum of three (3) days . . . ." [Doc. No. 5-1 at 11.] As a result, Plaintiff's allegation that she was "suspended without just or legitimate cause" directly implicates the CBA's suspension provision and will necessarily require the Court to

interpret the provision to determine whether Costco breached the implied covenant when the company suspended her. *See Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 861 (9th Cir. 1987) ("By placing in issue the terms of the collective bargaining agreement, it is clear that the rights and liabilities of the parties are a product of the collective bargaining agreement itself . . . .").

Having determined that section 301 preempts Plaintiff's first claim for breach of the implied covenant, the Court dismisses the preempted section 301 claim based on Plaintiff's failure to exhaust the CBA's grievance procedures.[3] *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 985-86 (9th Cir. 2007) ("Prior to bringing suit, an employee seeking to vindicate personal rights under a collective bargaining agreement must first attempt to exhaust any mandatory or exclusive grievance procedures provided in the agreement.") (citation omitted); *Sidhu v. Flecto Co.*, 279 F.3d 896, 898 (9th Cir. 2002) (same).

**B.    Remaining Claims**

    **1.    Statute of Limitations**

Defendants move to dismiss several of Plaintiff's claims as barred by the applicable statute of limitations. Plaintiff argues that any statute of limitations period in this case is subject to equitable tolling, or alternatively that Defendants should be estopped from raising a statute of limitations defense. She asserts that Defendants induced her to delay filing suit by making promises of possible pre-litigation settlement and a possible statute of limitations "tolling agreement" that they never intended to provide. [Doc. No. 13-1 at 22-23.]

In California, "[e]quitable tolling halts the running of the limitations period so long as the plaintiff uses reasonable care and diligence in attempting to learn the facts that would disclose the defendant's fraud or other misconduct." *Sagehorn v. Engle*, 46 Cal. Rptr. 3d 131, 135 (Cal. Ct. App. 2006) (quotations and citations omitted). The doctrine "focuses primarily on the *plaintiff's*

---

[3] Defendants further ask the Court to dismiss any preempted claim on the basis that Plaintiff failed to file suit within section 301's six-month statute of limitations period. However, that period applies to "hybrid" suits that involve section 301 *and* a claim that the employee's union breached its duty of fair representation. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 989 n.39 (9th Cir. 2007). In such hybrid suits, the Court applies the six-month limitations period in the National Labor Relations Act. *Id.* Because the instant case is not a hybrid suit that involves a fair representation claim, "the most closely analogous statute of limitations in the forum state" applies. *Gen. Teamsters Union Local No. 174 v. Trick & Murray, Inc.*, 828 F.2d 1418, 1423 (9th Cir. 1987). In California, the covenant claim is contract-based and governed by the four-year limitations period in Code of Civil Procedure section 337. *Ladd v. Warner Bros. Entm't, Inc.*, 110 Cal. Rptr. 3d 74, 83 n.7 (Cal. Ct. App. 2010).

1  excusable ignorance of the limitations period.  [It] is not available to avoid the consequences of
2  one's own negligence." *Id.* (quoting *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir.
3  1998)) (emphasis in original).  "To establish that equitable tolling applies, a plaintiff must prove
4  the following elements:  fraudulent conduct by the defendant resulting in concealment of the
5  operative facts, failure of the plaintiff to discover the operative facts that are the basis of its cause
6  of action within the limitations period, and due diligence by the plaintiff until discovery of those
7  facts." *Id.* (quoting *Fed. Election Comm'n v. Williams*, 104 F.3d 237, 240-41 (9th Cir. 1996))
8  (citations omitted).

9  "Equitable tolling and equitable estoppel are distinct doctrines." *Lantzy v. Centex Homes*,
10  73 P.3d 517, 532 (Cal. 2003).  While equitable tolling looks at the plaintiff's conduct, equitable
11  estoppel "focuses on the actions of the *defendant*." *Sagehorn*, 46 Cal. Rptr. 3d at 135 n.6
12  (emphasis added).  Estoppel applies in "circumstances in which a party will be estopped from
13  asserting the statute of limitations as a defense to an admittedly untimely action because his
14  conduct has induced another into forbearing suit within the applicable limitations period." *Lantzy*,
15  73 P.3d at 532.  Logically, only conduct that precedes the running of the statute of limitations may
16  serve as a basis for equitable estoppel.  *See Sagehorn*, 46 Cal. Rptr. 3d at 135 n.6.

17  The Court first finds that the statute of limitations periods in the instant matter are not
18  subject to equitable tolling.  No indication exists that Plaintiff was ignorant of the facts that formed
19  the basis for her claims.  She alleges that she was interviewed and suspended on the same day on
20  August 16, 2010.  Moreover, Defendants informed her of the basis for her suspension on that same
21  day.  No evidence exists in the record that even suggests Defendants concealed facts or delayed
22  her discovery of facts in any way.

23  The Court next finds that Defendants should not be estopped from asserting a statute of
24  limitations defense.  Plaintiff's account of events essentially chronicles her counsel's frantic
25  attempts to communicate with defense counsel between August 15, 2011, and August 19, 2011, to
26  discuss settlement and a tolling agreement.  [Doc. No. 13-1 at 23.]  While it appears that defense
27  counsel failed to timely return telephone calls or otherwise timely communicate, it does not appear
28  defense counsel made misrepresentations or otherwise acted to prevent Plaintiff from filing her

Complaint. While Plaintiff argues that Defendants delayed her with discussions on settlement and a tolling agreement, she presents to the Court evidence of a single telephone message from defense counsel on August 18, 2011. [*See* Doc. No. 13-1 at 22.] Based on the language in counsel's message, it appears that the tolling agreement issue had not been discussed until August 18, 2011. [*See id.* ("Um I'm not sure if . . . your absolute last day [to file suit] is this week. If it is, if you wouldn't mind speaking with me first, I'd appreciate that. *Maybe we can even do some sort of a tolling agreement* or so I need to check with my client on that . . . .") (emphasis added).] The problem with Plaintiff's reliance on defense counsel's supposed offer of a tolling agreement is it transpired *after* the one-year statute of limitations periods discussed below ran on August 16, 2011.[4] As a result, the August 18, 2011, telephone message could not have induced Plaintiff's untimely filing.

In any event, even if defense counsel had left the telephone message before the limitations period ran, nothing in counsel's telephone message amounts to the type of deceptive conduct or firm promise that could have induced Plaintiff to delay filing her Complaint. *Cf. Union Oil Co. of Cal. v. Greka Energy Corp.*, 80 Cal. Rptr. 3d 738, 744 (Cal. Ct. App. 2008) (finding equitable estoppel appropriate where defendant repeatedly engaged in settlement talks with plaintiff and asked plaintiff to withhold litigation until defendant resolved the matter). The message is essentially a request for contact to discuss settlement and a possible tolling agreement. Although defense counsel mentioned that settlement "certainly gets harder after the actual suit is filed," she did not promise settlement, indicate that her clients were highly likely to settle, or indicate that Defendants would not be willing to settle if she filed suit. The tone of the message was equivocal and non-committal. [Doc. No. 13-1 at 22 ("[W]e *may* be interested in speaking settlement . . . .") (emphasis added).] Thus, even if the telephone message had been left before the statute of limitations ran, the Court would not have found it a sufficient basis to estop Defendants' assertion of a statue of limitations defense. The Court now turns to Plaintiff's claims.

/ / /

---

[4] If the parties had discussed such an agreement at any time before August 16, 2011, Plaintiff does not provide any specifics about those conversations, the dates on which they transpired, or even mention that such discussions took place.

### 2. False Imprisonment Claim

Because Plaintiff's remaining claims derive from the events that form the basis of her alleged false imprisonment, the Court next considers this claim. Plaintiff contends this claim falls outside of the CBA because the agreement does not contain a provision that allows Costco to "interrogate" her.

As the Ninth Circuit has clarified, "[a] state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an *existing provision of a CBA* that can reasonably be said to be relevant to resolution of the dispute." *Cramer v. Consol. Freightways Corp.*, 255 F.3d 683, 693 (9th Cir. 2001) (emphasis added). When a CBA is silent on the conduct that gives rise to a plaintiff's claim, the Court need not resort to the CBA to interpret the claim. *See Tellez v. Pac. Gas & Elec. Co.*, 817 F.2d 536, 539 (9th Cir. 1987). In *Tellez*, the plaintiff's defamation claim arose from the distribution of a suspension letter that accused him of buying illegal narcotics while on the job. *Id.* The Court found that the CBA did not govern the defendant's allegedly defamatory conduct because it was silent on suspension letters and, therefore, the defendant could not have been acting under the CBA when distributing the letter. *Id.* at 539 ("[The CBA] neither requires nor regulates suspension letters. Accordingly, examination or interpretation of the agreement would not help to resolve Tellez's claim. It follows that the claim should not be preempted.")

Here, Plaintiff's false imprisonment claim is primarily and substantially based on the theft investigation and purported "interrogation," not the subsequent suspension. While the Complaint describes Plaintiff's confinement and interrogation at length, it only tangentially mentions her suspension in a single paragraph that precedes the false imprisonment claim allegations. [*See* Doc. No. 1-1 at ¶ 33.] Although the CBA permits Costco to suspend an employee accused of theft or immediately discharger her, it is silent as to the manner in which an employee may be investigated, interviewed, or detained. No CBA provision expressly gives Costco the right to

1  conduct these activities and no provision can reasonably be said to cover these activities.[5] Thus, a
2  determination of the validity of Plaintiff's false imprisonment claim can be made independently of
3  any CBA provision. *Cf. Gore v. Trans World Airlines*, 210 F.3d 944, 950 (8th Cir. 2000) (finding
4  that the employment relationship was "governed by a collective bargaining agreement *that*
5  *specifically requires TWA* to provide a safe working environment *and to promptly investigate* and
6  handle complaints relating to worker safety.") (emphasis added); *Mathis v. Boeing Co.*, 684 F.
7  Supp. 641, 643 (W.D. Wash. 1987) (finding preemption on the basis that the CBA "expressly
8  recognizes the Company's right to conduct security interviews.").

9       Nor can it be said that the false imprisonment claim invokes, or requires the interpretation
10 of, the CBA's dispute resolution and grievance procedures. The CBA defines a "grievance" as
11 "any dispute or difference between the Employer and the Union concerning the application or
12 interpretation of *any provision of this Agreement*." [Doc. No. 5-1 at 13 (emphasis added).]
13 Because the CBA is silent on investigation of employee misconduct, the manner in which Costco
14 investigated, interviewed, or detained Plaintiff does not give rise to a "grievance." As a result,
15 Plaintiff's false imprisonment claim will not necessitate interpretation of the CBA's grievance
16 provision.

17      Defendants cite *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522 (10th Cir. 1992), as an
18 analogous case that found preemption on similar facts. The bargaining agreement at issue in that
19 case "contained no limitation on [the company's] right to interview or investigate employees."
20 *Mock*, 971 F.2d at 524. Because the company "reserved" all "'management functions,
21 prerogatives, and rights not expressly delegated, limited, or abridged by the terms'" of the CBA,
22 the company actually had the right to interview and investigate employees by operation of this
23 reservation of rights. *See id.* at 524, 530. Thus, because the company could "conduct such an
24 investigation" under the agreement, the Court found that "[a]n analysis of whether [the company]
25 acted properly or not will inevitably require an analysis of what the CBA permitted." *Id.* at 530.

26

27     [5] Defendants characterize the theft investigation and interview as an "informal consultation" or "corrective
28 consultation" covered by the CBA. [Doc. No. 14 at 3.] However, Defendants' alleged actions belie this contention. Defendants allegedly accused Plaintiff of theft, sought her confession, and did not view the interview as a consultation to correct "transaction errors."

1 The agreement in *Mock* is distinguishable from the CBA in that the portions of the CBA presented
2 to the Court do not contain a similar reservation of unenumerated rights. Thus, it cannot be said
3 that the CBA reserved for Costco the right to investigate, interview, or detain Plaintiff.
4     Because Plaintiff's false imprisonment claim is not based on conduct that invokes an
5 existing provision of, or gives rise to a grievance under, the CBA, section 301 does not preempt
6 her state law claim for false imprisonment. However, the false imprisonment allegedly occurred
7 on August 16, 2010, and Plaintiff did not file her state Complaint until August 19, 2011.
8 Therefore, the Court exercises its supplemental jurisdiction and dismisses the claim with prejudice
9 as time-barred pursuant to California Code of Civil Procedure § 340(c), which fixes a one-year
10 statute of limitations for false imprisonment claims.[6]

11    **3.    Defamation (Slander and Slander Per Se) Claims**

12    Plaintiff's two defamation claims substantially derive from Defendant Paget's
13 "interrogation" of Plaintiff, not her three-day suspension. She alleges that Paget made knowingly
14 false statements during the interview and defamed her by "indicating that [she] lacked integrity,
15 honesty and trustworthiness, and was a thief." [Doc. No. 1-1 at ¶¶ 42-43, 48-53.] These
16 statements were allegedly made during the course of the investigation and interview, and, as
17 explained above, the CBA is silent on these activities. As a result, section 301 does not preempt
18 Plaintiff's defamation claims.[7]

19    As with the false imprisonment claim, the Court exercises its supplemental jurisdiction
20 over Plaintiff's slander-based claims and dismisses them with prejudice as time-barred pursuant to

---

[6] Because Plaintiff's false imprisonment claim shares a common nucleus of operative facts with the covenant claim, the Court exercises supplemental jurisdiction over the false imprisonment claim pursuant to 28 U.S.C. § 1367(a). *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) (holding that once federal claims have been dismissed, courts have discretion to hear, dismiss, or remand remaining claims to the state court).

[7] The Court acknowledges that the defamation claim references Costco's stated basis for Plaintiff's suspension. [*See* Doc. No. 1-1 at ¶ 49 ("The words about Plaintiff . . . stealing and having 'committed acts of dishonesty towards the company . . .' were slanderous per se . . . .").] However, unlike Plaintiff's covenant claim, the Court need not interpret any CBA provision here because these words can be evaluated without reference to, or interpretation of, any CBA provision. In contrast, for Plaintiff's first claim, the Court had to interpret a CBA provision that directly bore on whether a suspension "without just or legitimate cause" violated the CBA and implied covenant contained therein.

California Code of Civil Procedure § 340(c), which fixes a one-year statute of limitations for libel and slander claims.**⁸**

### 4. Intentional Infliction of Emotional Distress Claim

The Ninth Circuit has "discern[ed] some general principles" that courts can employ "to determine when an intentional infliction [claim] will be preempted." *Humble v. Boeing Co.*, 305 F.3d 1004, 1013 (9th Cir. 2002). First, "if the CBA specifically covers the conduct at issue, the claim will generally be preempted." *Id.* (citing *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 239-40 (9th Cir. 1990)). Second, "if the CBA does not 'cover' the allegedly extreme and outrageous conduct, the intentional infliction claim will not [be] preempted." *Id.* (citing *Miller v. AT&T Network Sys.*, 850 F.2d 543, 550 n.5 (9th Cir. 1988)). Third, "even if the CBA does purport to cover the conduct at issue, the [intentional infliction] claim still may not be preempted if it has been tacked on to the violation of a separate specific non-negotiable state statute, the violation of which always rises to the level of outrageousness."⁹ *Id.* at 1013-14 (citing *Miller*, 840 F.2d at 550 n.5); *see also Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 697 (9th Cir. 2001).

Plaintiff alleges Defendants acted in a manner to intentionally cause her "severe emotional distress." [Compl., Doc. No. 1-1 at ¶ 67.] The Complaint almost exclusively focuses on the investigation and interview that preceded her three-day suspension. As explained above, the CBA is silent on, and therefore does not "cover," these events for section 301 purposes. As a result, section 301 does not preempt Plaintiff's IIED claim.

Defendants move to dismiss Plaintiff's IIED claim on the basis that California's Workers' Compensation Act ("WCA") is the exclusive remedy for workplace injuries such as emotional distress. Although the WCA may not preclude a false imprisonment claim under certain

---

⁸ With respect to the alleged defamatory statements Defendants made as the basis for Plaintiff's three-day suspension, [*see* Doc. No. 1-1 at ¶ 33], Plaintiff argues that, "[w]ithout retraction, the defamatory statement . . . continued until at least the end of the three-day suspension and calculated to be August 20, 2010." [Doc. No. 13-1 at 21.] As a result, she argues, her August 19, 2011, Complaint was timely filed. However, Plaintiff does not cite authority to support her argument, and the California Supreme Court has held that a cause of action for defamation accrues at the time of the communication. *Shively v. Bozanich*, 80 P.3d 676, 686 (Cal. 2003); *Bernson v. Browning-Ferris Industries*, 873 P.2d 613, 615 (Cal. 1994). Here, the date of communication was August 16, 2010. Accordingly, the one-year statute of limitations ran on August 16, 2011.

⁹ Because Plaintiff has not "tacked on" her IIED claim to the violation of a separate state statute, this third consideration does not apply here.

circumstances, *see generally Fermino v. Fedco, Inc.*, 872 P.2d 559, 571-72 (Cal. 1994), the close question whether the WCA precludes an emotional distress claim *based on* the false imprisonment allegations in the instant case is one the Court will defer to the state court. Further, Plaintiff's case is distinguishable from *Kirton v. Summit Med. Ctr.*, 982 F. Supp 1381, 1384-85 (N.D. Cal. 1997), which did not involve an investigatory interview, false imprisonment claim, or similar allegations. The Court also defers to the state court on whether Defendant Paget is immune from suit on the basis of California's manager's privilege doctrine. As such, the Court declines to exercise supplemental jurisdiction over the IIED claim and therefore remands the claim to the state court. 28 U.S.C. § 1367(c)(1), (c)(3).

### 5. California Business and Professions Code § 17200 Claim

Plaintiff's section 17200 claim is based exclusively on Defendants' investigation and interview. She alleges they engaged in "unfair and fraudulent business acts," including lying about the existence of surveillance video that supposedly inculpated her, threatening that she would be arrested despite the lack of evidence of a crime, and intentionally subjecting her to "coercive confinement in order to control other employees and deter theft despite [Plaintiff's] innocence." [Doc. No. 1-1 at ¶ 73.] For the same reasons stated above, section 301 does not preempt this claim and it is not subject to dismissal on this basis. However, as with Plaintiff's IIED claim, the Court declines to exercise supplemental jurisdiction and remands Plaintiff's section 17200 claim to the state court. 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Remand, as well as Defendants' Motion to Dismiss, and orders as follows:

(1) Plaintiff's state law claim for breach of the implied covenant of good faith and fair dealing is preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and is **DISMISSED WITHOUT PREJUDICE**;

(2) The Court **DISMISSES WITH PREJUDICE** Plaintiff's defamation (slander), defamation (slander per se), and false imprisonment claims as time-barred;

///

1  (3)     The Court declines to exercise supplemental jurisdiction over Plaintiff's intentional
2           infliction of emotional distress and Business and Professions Code § 17200 claims and
3           **REMANDS** these claims to the San Diego Superior Court; and
4  (4)     Plaintiff's request for attorneys' fees is **DENIED**.
5  IT IS SO ORDERED.
6  DATED: April 20, 2012

*[signature]*

Hon. Michael M. Anello
United States District Judge